IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZACK K. DE PIERO, <br><br> Plaintiff, <br><br> v. <br><br> PENNSYLVANIA STATE UNIVERSITY and DAMIAN FERNANDEZ, MARGO DELLICARPINI, LILIANA NAYDAN, CARMEN BORGES, ALINA WONG, LISA MARRANZINI, FRIEDERIKE BAER, and ANEESAH SMITH, in their official and individual capacities <br><br> Defendants. | CIVIL ACTION NO: <br> No. 2:23-cv-02281 |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT WITH PREJUDICE**

Much like his Amended Complaint, Plaintiff's Opposition to Defendants' Motion to Dismiss the Amended Complaint ("Opposition") relies on rhetorical bluster over actual pled facts and relevant legal citations. Plaintiff alleges that the Pennsylvania State University (the "University") engaged in antiracism efforts, and he contends that he subjectively found those efforts to be offensive and discriminatory. That is not enough to state a claim. Plaintiff must also plead plausible facts indicating that the alleged discrimination would have detrimentally affected a reasonable person in similar circumstances. He has failed to do so. His racial discrimination claims must be dismissed.

Plaintiff's arguments in support of his "equal benefit" clause § 1981 claim and his First Amendment claim are equally infirm. Plaintiff offers no support that a § 1981 claim is viable in the employment discrimination context, and even if it did, he has not stated a valid "equal benefit" claim. As for his First Amendment claim, Plaintiff urges this Court to adopt an unreasonably

1

narrow interpretation of this Circuit's precedent and look to <u>who</u> made the speech rather than <u>what the speech was about</u> or <u>where</u> it took place. Under the correct analysis and application of *Gorum v. Sessoms*, 561 F.3d 179, 185 (3d Cir. 2009), Plaintiff's speech, as pled, was not protected by the First Amendment. Plaintiff's Amended Complaint should be dismissed with prejudice in its entirety.

I. **ARGUMENT**

    A. **Plaintiff's "Hostile Environment" Race Discrimination Claim Should Be Dismissed.**

Plaintiff's hostile environment claim fails to allege the "severe or pervasive" conduct necessary to support a claim. Nothing raised in Plaintiff's Opposition alters this conclusion. Remarkably, Plaintiff does not cite a single case where sparse allegations of a hostile environment such as his have survived a motion to dismiss. (*See* Dkt. 24 (Opposition) at 10-13.) Nor does Plaintiff offer any argument or cite any cases suggesting that the purported harassment he alleges "would have detrimentally affected a reasonable person in similar circumstances." This is fatal to his claim. *See, e.g., Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009) (a prima facie case of hostile environment includes plausible allegations that it would "detrimentally affect a reasonable person in similar circumstances"). To be clear, for purposes of this motion to dismiss, the University accepts that Plaintiff has a strident and defined view of race relations in America, and he was troubled by efforts, after the death of George Floyd, to discuss antiracism at the University through academic discussions, professional training, and outside speakers. Plaintiff's subjective feelings, however, do not render the University's efforts discriminatory. Instead, to state a claim, Plaintiff must plausibly allege that the conduct was objectively offensive, *see id.*, and he has not done so. As Defendant Borges succinctly summarized in evaluating Plaintiff's internal claim of race discrimination: "The particular topic for academic

discussion, while it may be offensive to you, does not constitute discrimination towards you." (Dkt. 4 (Am. Compl.) ¶ 108). The Court should similarly find here and dismiss Plaintiff's claim.

The two cases Plaintiff does cite do not alter this conclusion. Plaintiff relies on *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1081 (3d Cir. 1996) and the unreported decision of *Weiping Liu v. Indium Corp. of Am.*, No. 6:16-cv-01080, 2019 WL 3825511 (N.D.N.Y. Aug. 15, 2019). Neither presents circumstances analogous to those here. In *Aman*, black employees were subject to inherently racist remarks like "all of you" and "that one in there," harassed on a daily basis to "not steal," and made to do menial jobs. *Aman.*, 85 F.3d at 1082. White employees "were not treated in a similar fashion." *Id.* In stark contrast, the alleged conduct here is about discussions that took place University-wide or Department-wide—meaning that all faculty and staff, regardless of race, were encouraged to attend. There was not the differential treatment directed solely at white employees (let alone treatment of a severity) akin to *Aman*. Likewise, the unreported decision from the Northern District of New York, *Weiping Liu*, does not advance Plaintiff's argument. There, the court found that the Plaintiff <u>failed</u> to elicit any specific facts from which a jury could reasonably infer discrimination based on a racial stereotype, noting that Plaintiff could not rely on his *own* belief of what was a racial stereotype to prevail. *Weiping Liu*, 2019 WL 3825511 at *13. In other words, *Weiping Liu* reached the opposite conclusion that Plaintiff espouses. He offers no other authority suggesting that the Defendants' action here amounted to racial stereotyping or racial discrimination, let alone conduct sufficient to sustain a hostile environment claim. His claim (Counts 1 and 2) should be dismissed with prejudice.

      **B.**     **Plaintiff's Disparate Treatment Allegations Fail to State a Valid Claim.**

Plaintiff's arguments in support of his disparate treatment discrimination claim are equally weak. As an initial matter, Plaintiff's contention that the Court should disregard Defendants' arguments because Defendants "conflate … 'racism,' with what went on at Penn State" belies his

3

own allegations in the Amended Complaint. (Dkt. 24 (Opposition) at 15.) It is disingenuous for Plaintiff to argue that he is not complaining that the University called him a racist when the Amended Complaint alleges that the University's "race-based dogma meant that teachers … were 'racist' simply by virtue of teaching while 'white.'" (Dkt. 4 (Am. Compl. ¶ 70.) As discussed in Defendants' Motion, even if Plaintiff's implication that Plaintiff (or other white teachers) was being called a "racist" were true, this alleged implication cannot form the basis of a racial discrimination claim. *See* (Dkt 23 (Motion) at 18 (citing *Ledda v. St. John Neumann Reg'l Acad.*, No. 4:20-CV-700, 2021 WL 1035106 at *8 (M.D. Pa. Feb. 18, 2021)).

Plaintiff's attempt to distinguish Defendants' authority on this point is misplaced and unpersuasive. For instance, Plaintiff attempts to distinguish *Matu-Dadie v. Wernersville State Hosp.*, No. 5:17-CV-05451, 2018 WL 3535000 (E.D. Pa. July 23, 2018)—which is directly on point—because purportedly his Amended Complaint, unlike the Complaint in *Matu-Dadie*, involves a "supervisor" making "direct discriminatory statements." (Dkt. 24 (Opposition) at 15.) Even if this made a legal difference, Plaintiff points only to Defendant Borges' alleged statement that "there is a problem with the white race." (*Id.*) However, the Amended Complaint does not allege—nor could it—that Defendant Borges, who worked in the University's Affirmative Action Office in University Park, was Plaintiff's supervisor in the English Department at Penn State-Abington. (*See* Dkt. 4 (Am. Compl.) ¶ 8.) There is no basis to distinguish *Matu-Dadie*; it is on all fours with Plaintiff's claim.

Plaintiff's disparate treatment claim also fails because the Amended Complaint does not allege an adverse employment action, and nothing in the Opposition indicates otherwise. While Plaintiff relies on *Aman* to suggest that remaining in "intolerable" conditions is sufficient for constructive discharge, *Aman* was careful to note that the harassment "stepped up" and became

4

"more abusive than usual" such that the plaintiff was constructively discharged. *Aman*, 85 F.3d at 1084. No such "stepped up" harassment or additional abuse is alleged here, and as such, *Aman* is inapposite. Moreover, courts have distinguished *Aman's* holding and not found constructive discharge where a complaint's allegation fell short of the "intolerable conditions" threshold that was satisfied there. *See Mitchell v. Kensington Cmty. Corp. for Individual Dignity,* No. CV 18-2869, 2019 WL 6353285, at *9 (E.D. Pa. Nov. 26, 2019) (noting that "the similarities between this case and *Aman* do not surpass the theoretical" where plaintiff did not allege similar disparaging racial remarks, being ignored, disrespected, falsely accused of favoritism, or ordered to complete menial tasks). Like *Mitchell*, here Plaintiff's allegations are not akin to the "intolerable conditions" alleged in *Aman*, and the Court should similarly hold that Plaintiff, even under his own pleading, was not constructively discharged.

Further, and as discussed in the University's opening brief, none of the *Clowes* factors support finding constructive discharge here. *Clowes v. Allegheny Valley Hosp.*, 991 F.2d 1159 (3d Cir. 1993). Plaintiff incorrectly disputes this by claiming that his "job responsibilities were radically altered" because he was "required to grade on the basis of race." (Dkt. 24 (Oppostion) at 17.) This change in grading philosophy, even if true, took place more than three years prior to Plaintiff's purported constructive discharge. (Dkt. 4 (Am. Compl.) ¶ 41). There must be "at least some relation between the occurrence of the discriminatory conduct and the employee's resignation." *McWilliams v. W. Pa. Hosp.*, 717 F.Supp. 351, 355–56 (W.D.Pa. 1989). Numerous courts have determined that a three year gap between the complained of conduct and the employee leaving the job—like here—is insufficient to support a claim of construcive discharge. *Id.* (finding that plaintiff could not show causation for constructive discharge because the incidences complained of occurred three years prior to her resignation); *Burton v. Pennsylvania State Police*,

5

990 F. Supp. 2d 478, 515 (M.D. Pa. 2014), aff'd, 612 F. App'x 124 (3d Cir. 2015) (holding "there is no causation between the statement and Plaintiff's resignation as three years had passed between the two events"). Thus, even if the Court were to interpret this alleged change in grading philosophy as a "radical altering" of job responsibilities—which is dubious—the length of time between this change and Plaintiff's departure from the University over three years later renders it immaterial to the constructive discharge analysis.

Plaintiff has failed to allege constructive discharge and his disparate treatement claims in Counts 1 and 2 should be dismissed with prejudice.

### C. Plaintiff's "Equal Benefit" § 1981 Claim Lacks Legal Support and Fails to Allege "But For" Causation.

Plaintiff cites no authority suggesting that *in the employment discrimination* context there may be a separate and distinct claim under § 1981's "equal benefit" clause. (Dkt. 24 (Opposition) at 17-18.) To the contrary, this Circuit has repeatedly explained that "the substantive elements of an employment discrimination claim brought under § 1981 are identical to those brought under Title VII." *Greer v. Mondelez Global*, 590 F. App'x 170, 172 n.4 (3d Cir. 2014). Defendants have been unable to locate a single analogous case in which an *employee* raised an "equal benefit" clause claim against his employer. Instead, "equal benefit" cases are limited actions against state actors, frequently police officers, for racially motivated misuse of governmental power. *See, e.g. Hall v. Pa. State Police*, 570 F.2d 86, 91 (3d Cir. 1978). Title VII standards, instead, should guide the Court's analysis. As noted in the University's opening brief, under those standards, Plaintiff's Amended Complaint falls far short of stating a valid § 1981 claim. (*See* Dkt. 23 (Motion to Dismiss) at 11-16.)

Even if Plaintiff is right that an "equal benefit" clause case is viable in the employment context—which he is not—his claim is insufficient. Plaintiff alleges only that he was "deprived …

6

of the equal protection of Penn State's policies and procedures" when he submitted a complaint of racial discrimination and when complaints of bullying and harassment were submitted against him. (Dkt. 4 (Am. Compl) ¶ 151-52.) That is not enough to sustain an "equal benefit" claim. A plaintiff must initially plead that "*but for* race, [he] would not have suffered the loss of" the full and equal benefit of the law. *Wright v. Reed*, No. 5:20-CV-02664, 2021 WL 912521, at *2 (E.D. Pa. Mar. 10, 2021) (citing *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020)). A plaintiff cannot meet his burden with "conclusory allegations of generalized racial bias." *Id.*

Plaintiff's Amended Complaint lacks even conclusory but-for allegations. He does not allege the University handled the complaints the way it did *because* Plaintiff is white. Plaintiff instead spends a dozen paragraphs in his Amended Complaint alleging that the University addressed the complaints of discrimination and bullying the way it did because of Plaintiff's outspoken criticism, <u>not</u> his race. (*See* Dkt. 4 (Am. Compl.) ¶ 164-172.) As such, even under an "equal benefit" clause analysis, Plaintiff has failed to state a valid claim. *See Wright,* 2021 WL 912521 at *4-5 (dismissing § 1981 equal benefit claim where plaintiff failed to plausibly allege a connection between the harm and his race).

The disconnect between Plaintiff's allegations and the legal requirements of an "equal benefit" § 1981 claim is further evident in the sole case Plaintiff cites in support of his argument, *Hall v. Pa. State Police*, 570 F.2d 86, 91 (3d Cir. 1978). In *Hall*, the Third Circuit reversed the lower court's dismissal of a claim under § 1981, where the complaint alleged that the plaintiff was photographed when he entered the bank pursuant to a police directive to take photographs of "any black males or females coming into bank who may look suspicious." *Id.* Critically, the court noted that this was the "implementation of a policy deliberately adopted by the bank management to

7

offer its services under different terms dependent on race." *Id.* No such "deliberate" policy is alleged here—only the single instance of Plaintiff's purported discipline.

>   D. **Plaintiff's First Amendment Argument Unreasonably Narrows Relevant Precedent and Ignores Persuasive Authority.**

Plaintiff wrongly urges this Court to cabin the Third Circuit's holding in *Gorum v. Sessoms* to "non-academic" employees and instead follow the analysis of other Circuit Courts. (Dkt. 24 (Opposition) at 20-21). That cuts *Gorum* too fine. *Gorum* left open only the question of whether its analysis applied in the realm of teaching and scholarship. *Gorum v. Sessoms*, 561 F.3d 179, 186 (3d Cir. 2009). It did not suggest, as Plaintiff argues, that its analysis should apply "for most public employees—*but not for academics*." (Dkt. 24 (Opposition) at 19 (emphasis in original)). Plaintiff's articulation of *Gorum* runs counter to the facts of that case, which addressed speech *by an academic*, there a tenured faculty member. *Gorum*, 561 F. 3d at 186. The speech in *Gorum,* like the Plaintiff's pled speech, did not take place in the classroom or during a teaching session. As such, it was speech related to an employee's official duties—and not protected speech as a citizen.

Moreover, contrary to Plaintiff's assertion, not "all Circuit Courts" that have addressed the issue of speech in the academic setting have rejected the "official duties" test for protected speech. (Dkt. 24 (Opposition) at 21.) In the very analogous case of *Porter v. Bd. of Trustees of N. Carolina State Univ*, another "reverse discrimination" case handled by Plaintiff's counsel, the Fourth Circuit held that a tenured professor's expression of concern at a departmental meeting about a proposal to add a diversity question to student course evaluations was not protected speech because, applying the official duties test, it was speech as an employee. *Porter*, like *Gorum*, looked at <u>where</u> the speech took place. *Porter*, 72 F.4th at 583. Because the professor in Porter "was not teaching a class nor was he discussing topics he may teach or write about as part of his employment" it was speech in his capacity as an employee and unprotected. *Id*. The same is equally true for Plaintiff.

8

*Porter* and *Gorum* are clear: the mere fact that speech is made by an academic is not determinative of whether the speech is protected by the First Amendment. One must look at the location and content of the speech, and if it takes place outside the classroom, determine whether it was in the individual's capacity as an employee. Here, the pled speech took place in what Plaintiff himself alleges was a mandatory professional development training meeting. It was not actually in the classroom or part of a scholarly work. The analysis in *Gorum* applies, which compels a finding that Plaintiff's speech as pled was as an employee, not a citizen. As such, it was not protected speech and Plaintiff's First Amendment claim fails.

    **E.**    **Plaintiff Defines the Right at Issue Too Broadly and Qualified Immunity Shields the Individual Defendants**

Even if the Court concludes that Plaintiff's pled speech was protected speech, qualified immunity applies and shields the individual defendants from monetary damages. Plaintiff would define the right at issue for purposes of a qualified immunity analysis as the "right to speak out and challenge his public institution's discriminatory practices without retaliation," but that is far too broad. (Dkt. 24 (Opposition) at 28.) The Supreme Court has directed that the Court's analysis on whether a right is "clearly established" must be very narrow:

> "We have repeatedly told courts … not to define clearly established law at a high level of generality. The dispositive question is whether the violative nature of *particular* conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition."

*Mullenix v. Luna*, 577 U.S. 7, 12, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015) (internal citations omitted). The "particular" conduct and "specific context" of the right Plaintiff seeks to establish here are exactly as Defendants defined in their motion: the right to express his viewpoint during a professional development meeting, without censure, in an aggressive and unprofessional manner. (Dkt. 23 (Motion to Dismiss) at 26-27).

9

This cannot plausibly be a right at all, let alone a "clearly established" one. In a weak attempt to suggest otherwise, Plaintiff relies on two generic retaliation cases in which the plaintiff spoke out against an employer's policy and was retaliated against. Those cases have no bearing on whether the particular right here is clearly established; in neither case was there a suggestion that the plaintiff's objection to policy was unprofessional. In contrast, the Fourth Circuit's decision in *Porter*, discussed above, is squarely on point. *Porter* found plaintiff's speech was *not* protected speech where he spoke out against the addition of a diversity question to a survey in a manner which the University determined was "bullying." *Porter*, 72 F.4th at 584. If *Porter* can address circumstances similar to those here and find no violation, it is evident that the right is not clearly established. Qualified immunity should thus apply.

## II.    CONCLUSION

For the foregoing reasons, the University respectfully requests that the Court grant its motion and dismiss Plaintiff's Complaint, in its entirety, with prejudice.

Date: October 24, 2023                                    Respectfully Submitted,

                                                          SAUL EWING LLP

                                                          /s/ James A. Keller
                                                          James A. Keller, Esq. (ID No. 79855)
                                                          Joseph F. O'Dea, Jr., Esq. (ID No. 48370)
                                                          Centre Square West
                                                          1500 Market Street, 38th Floor
                                                          Philadelphia, PA, 19102-2186
                                                          T: (215) 972-1964
                                                          James.Keller@saul.com
                                                          Joseph.Odea@saul.com

                                                          *Attorneys for Defendants Pennsylvania State University, Damian Fernandez, Margo DelliCarpini, Liliana Naydan, Carmen Borges, Alina Wong, Lisa Marranzini, Friederike Baer, and Aneesah Smith*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZACK K. DE PIERO,<br><br>        Plaintiff,<br><br>        v.<br><br>PENNSYLVANIA STATE UNIVERSITY and DAMIAN FERNANDEZ, MARGO DELLICARPINI, LILIANA NAYDAN, CARMEN BORGES, ALINA WONG, LISA MARRANZINI, FRIEDERIKE BAER, and ANEESAH SMITH, in their official and individual capacities<br><br>        Defendants. | CIVIL ACTION NO:<br>No. 2:23-cv-02281 |

**CERTIFICATE OF SERVICE**

I hereby certify that on September 25, 2023, I electronically filed Defendants' Reply Brief in Support of Their Motion to Dismiss Plaintiff's Amended Complaint, with the Clerk of the Court by using the CM/ECF system. I certify that the following counsel of record are registered as ECF filers and that they will be served by the CM/ECF system:

**Michael Thad Allen, Esq.**
Allen Harris PLLC
PO Box 404
Quaker Hill, CT 06375
860-325-5001
mallen@allenharrislaw.com

11

**Samantha K. Harris, Esq.**
Allen Harris PLLC
PO Box 673
Narberth, PA 19072
267-304-4538
samantha@mudrickzucker.com
*Attorneys for Plaintiff*

Dated: October 24, 2023

/s/ *James A. Keller*
James A. Keller, Esq. (ID No. 79855)
Joseph F. O'Dea, Jr., Esq. (ID No. 48370)
Matthew J. Smith, Esq. (ID No. 314157)
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA, 19102-2186
T: (215) 972-1964
James.Keller@saul.com
Joseph.Odea@saul.com
Matthew.Smith@saul.com

*Attorneys for Defendants Pennsylvania State University, Damian Fernandez, Margo DelliCarpini, Liliana Naydan, Carmen Borges, Alina Wong, Lisa Marranzini, Friederike Baer, and Aneesah Smith*