IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZACK K. DE PIERO,<br><br>    Plaintiff,<br><br>v.<br><br>PENNSYLVANIA STATE UNIVERSITY, et al,<br><br>    Defendants. | CIVIL ACTION NO:<br><br>No. 2:23-cv-02281 |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Opposition" or "Opp.")[1] radiates with De Piero's anger about any discussion of race or equity. While consequently filled with bluster, and littered with mischaracterizations of undisputed testimony and evidence,[2] his Opposition does not create material issues of disputed fact and does not preclude summary judgment for Defendants. Summary judgment should be granted.

### RESPONSE TO PLAINTIFF'S FRCP 56.1 STATEMENT OF MATERIAL FACTS

As required by FRCP 56.1, Defendants have separately responded to De Piero's Statement of "Disputed" Facts. *See* Defendants' Reply Statement of Undisputed Material Facts. Those responses are incorporated here by reference. No actual "fact" raised by De Piero creates a material dispute precluding the entry of summary judgment in Defendants' favor.

### REPLY POINT I: DE PIERO HAS NEVER STATED (AND THERE IS NO EVIDENCE TO SUPPORT) A DISCRETE "RETALIATION" CLAIM PURSUANT TO TITLE VII OR THE PHRA

**A. De Piero's 11th-hour assertion that he has stated discrete retaliation claims pursuant to Title VII and the PHRA is belied by the history of this case.**

After almost 18 months of litigation, after extensive motion to dismiss briefing, after voluminous discovery, and after submitting multiple other filings with the Court (such as

---

[1] Defendants respectfully refer the Court to their moving brief in support of Defendants' Motion for Summary Judgment ("Moving Brf.") (ECF No. 52) and Defendants' Statement of Undisputed Material Facts (ECF No. 52-1) for all definitions previously used by Defendants on this motion, which are incorporated herein.

[2] De Piero argues that his text message conversations with his friends, produced by him in discovery and cited in the Moving Brief, are irrelevant under Federal Rule of Evidence 403. Opp., pp. 1-2. He argues that Defendants use these messages to "paint De Piero as a misogynist and racist bent on insulting Asians and women." An inquiry into the relevance of evidence under FRE 403 is inappropriate on a motion for summary judgment. *Stephan Zouras LLP v. Marrone*, No. 3:20-CV-2357, 2023 WL 2616021, at *1 (M.D. Pa. Mar. 23, 2023) (denying motion to strike reference to certain facts in summary judgment without prejudice, subject "to renewal as a motion *in limine* at an appropriate time following the resolution of the pending summary judgment motions."). Additionally, should the Court require separate briefing on why these messages are relevant to a case involving alleged race discrimination, Defendants would be happy to provide it.

1

Plaintiff's own description of his claims in the Rule 26(f) Plan), De Piero now *for the first time* avers that he has asserted discrete retaliation claims under the PHRA and Title VII that Defendants have not moved to dismiss. Opp., p. 28. This is not so.

De Piero cites to ECF No. 1 in support of this averment. ECF No. 1 is De Piero's superseded and inoperative initial complaint. *See* Opp., p. 28. Even if this Court were to consider De Piero's amended complaint instead, his argument still fails.

As an initial matter, when Defendants moved to dismiss the amended complaint, they sought dismissal of that pleading in its entirety (ECF No. 23). In other words, even if De Piero was silently trying to assert discrete counts for retaliation, Defendants moved to dismiss them as part of their global motion to dismiss the entire amended complaint.

Moreover, in his opposition to Defendants' motion to dismiss the amended complaint, De Piero did not assert that he was also bringing discrete retaliation claims, nor allege that Defendants had failed to seek dismissal of his theoretical "retaliation" claims. ECF No. 24. De Piero did not raise nor preserve any such argument.

Additionally, in this Court's Opinion ruling on Defendants' motion to dismiss De Piero's amended complaint, the Court articulated for all parties the only claims that De Piero had asserted under Title VII and the PHRA—namely, claims of disparate treatment and hostile work environment (ECF No. 31, pp. 7-17). At no time did De Piero object to the Court's articulation of the claims, or suggest that he was also asserting separate "retaliation" claims. This Court's concurrent Order confirmed that after ruling on Defendants' motion to dismiss, De Piero's only remaining cause of action pursuant to Title VII, Section 1981, and the PHRA was for **hostile work environment.** *See* ECF No. 32. De Piero did not move for reconsideration nor file a motion to clarify or amend the Court's Order.

2

In sum, De Piero knows full well that he has never actually asserted nor pursued discrete counts for "retaliation" pursuant to Title VII or the PHRA, and he should not be permitted to bootstrap in those claims at this late juncture.

**B. Any retaliation claim pursuant to the PHRA and Title VII fails on the merits.**

This argument is stated strictly in the alternative, as the Court need not reach the question of whether a retaliation claim pursuant to the PHRA and Title VII may survive summary judgment, since De Piero failed to plead or raise any such argument in the past.

Under Title VII, it is unlawful "for any employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." *Greer v. Mondelez Glob., Inc.*, 590 F. App'x 170, 175 (3d Cir. 2014) (internal citation omitted). To make out a *prima facie* case of retaliation, "a plaintiff must show that: (1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action." *Greer*, 590 F. App'x at 175 (*citing Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 286 (3d Cir. 2001)). PHRA claims are analyzed using the same framework used for Title VII claims. *Scheidemantle v. Slippery Rock Univ.*, 470 F.3d 535, 539 n. 5 (3d Cir. 2006).

De Piero points to the complaint he filed with the EEOC and an internal grievance he filed with PSU-Abington as the protected activity forming the basis of his retaliation claim. Opp., p. 28. De Piero cannot, however, point to any evidence of an adverse employment action sufficient to satisfy the second element of a retaliation claim. "[A]dverse employment action" in the context of

retaliation claims means a "significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing significant change in benefits." *Yeager v. UPMC Horizon,* 698 F. Supp. 2d 523, 544 (W.D. Pa. 2010); *Pa. State Police v. Suders*, 542 U.S. 129 (2004). In addition, a plaintiff must show that a reasonable employee would have found the challenged action to be materially adverse. *Burlington Northern & Santa Fe Railway v. White*, 548 U.S. 53 (2006) (holding that an employment action is materially adverse when it is a significant, rather than trivial, harm).

De Piero makes the conclusory argument that the "performance expectations" document placed in De Piero's personnel file amounts to an adverse employment action. But De Piero fails to point to any evidence in the record that the "performance expectations" document resulted in a significant change in his employment at PSU-Abington, nor could he. *See Yeager,* 698 F. Supp. 2d at 524; *Burlington Northern*, 548 U.S. 53. The "performance expectations" document is dated January 20, 2022. (App.2537-2538). Two months later, in March 2022, De Piero was re-upped to work again at PSU-Abington for the 2022-2023 Academic Year, and received a pay raise (*cf.* App.1987; App.2552 and App.0314, De Piero Dep. 314:9-13). There was no negative impact to De Piero's employment as a result of that "performance expectations" document.

De Piero also concedes that he voluntarily left PSU-Abington to get a new job. Opp., p. 30. This also does not constitute evidence of an adverse employment action, as this Court previously held in this matter: "De Piero has not pleaded sufficient allegations to clear the high bar that the Supreme Court and the Third Circuit have set for converting otherwise voluntary resignations into constructive discharges." *De Piero v. Pennsylvania State Univ.,* 711 F. Supp. 3d 410, 421 (E.D. Pa. 2024).

4

Without proof of an adverse employment action, De Piero cannot plausibly prove any putative (albeit not pled) retaliation claim. As such, even if they were stated, De Piero's alleged Title IV and PHRA retaliation claims fail, and summary judgment in favor of Defendants is required.

### REPLY POINT II: DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON DE PIERO'S HOSTILE WORK ENVIRONMENT CLAIM

**A. There is no factual dispute: De Piero did not suffer intentional discrimination because of his race.**

De Piero essentially argues that he suffered intentional discrimination because Defendants allegedly imposed "race-essentialist dogma" on him rather than permitting *voluntary* discussions on race. *See* Opp., p. 24. De Piero first focuses on what he characterizes as "antiracist" contract-based grading policies. His discussion of these "policies" evinces no intentional discrimination. De Piero initially *agreed* to co-lead a discussion on contract-based grading, then changed his mind, saying he lacked the requisite expertise. (App.2312-2314). Naydan accepted his decision to "participate but not facilitate" that discussion. (App.2315-2316). PSU-Abington did not discipline or otherwise penalize De Piero for his request not to lead that discussion.

As alleged further evidence of this "dogma," De Piero next points to alleged listserv critiques of a white police officer hired at PSU-Abington. These comments were of course not directed at De Piero, and Naydan's comments, on which De Piero is once again focused, explicitly explain that nothing is being directed at *any* individual: "The problem for me is that the police are part of institutional racism in our country. The problem for me is that our country is in a state of crisis because the police are killing black people. **This doesn't mean that I look at an individual police officer and feel hostility toward that individual**. . . ." (App.2698-2699) (emphasis added). None of this is evidence of intentional discrimination, let alone toward De Piero.

5

De Piero finally focuses on voluntary training that included readings on topics like "Black Linguistic Justice," "White Teachers are a Problem," and "White Privilege" – but once again, this was not "intentional discrimination" directed at De Piero. These sessions were open to all, and De Piero does not deny that attendance at these sessions, and the readings, were entirely voluntary. If De Piero truly believes that this material was "discriminatory," ***he intentionally engaged with it***, not the other way around. *See* Moving Brf., pp. 8-10.

**B.  De Piero also fails to point to any severe or pervasive conduct.**

De Piero suggests that the "conduct" about which he complains was "state sponsored," and therefore by definition severe and pervasive. Opp., p. 21. De Piero points to the noted listserv traffic around the hiring of a white police officer to suggest that there was a "campaign" against white employees at PSU-Abington; but, confusingly, points to the following email by the then Interim Chancellor of PSU-Abington, Dr. Andrew August, as conclusive evidence of a "campaign":

> I am concerned about the recent posts on the listserv in response to an introduction of one of our police officers. It is important that we all approach one another and all members of our community with sensitivity and recognize our biases and assumptions. I would also encourage us all to maintain civility and promote a culture of mutual response and collegiality. The issues raised in these conversations are important ones. I encourage you to reach out to your supervisor and/or my office with any concerns. We will plan a forum to continue the conversation around these issues.

(App.2701). Nothing about Dr. August's email suggests a "campaign" at PSU-Abington; and in any event, this email actually undermines De Piero's argument. It is objective evidence of senior administrators of PSU-Abington addressing and expressing concern about what De Piero characterizes as racist or negative comments, not allowing or endorsing those comments.

De Piero also cites to a text message where his colleague Matthew Rigilano used the word "orthodoxy," but again, a single faculty member's use of that term is no evidence of a "campaign"

6

or a "severe and pervasive" discriminatory environment. Rigilano's entire statement in this regard was as follows: "maybe the next few meetings will be refreshing if we can get past repeating orthodoxy." (App.2244). That's it. No "campaign" can be created from this single text message.[3]

Finally, despite De Piero's statement to the contrary, it absolutely is relevant that others did not think there was anything close to a hostile environment at PSU-Abington. De Piero suggests that "[i]t proves nothing that ideological partisans among PSU faculty (who lied about De Piero constantly) did not subjectively feel insulted by dogma about 'white privilege', 'white people', as the 'problem', etc." *See* Opp., p. 22. Actually, it does. Putting aside De Piero's snide attack on faculty as "ideological partisans" and the failure to cite to evidence that these colleagues "lied about De Piero constantly," the undisputed fact is this: if a number of white faculty were attending the same meetings and reading the same materials, and just one felt discriminated against or attacked at all – that just cannot be, and was not, an objectively or plausibly "hostile environment."

---

[3] De Piero cites *Barbosa v. Tribune Co.*, No. CIV.A. 01-CV-1262, 2003 WL 22238984 (E.D. Pa. Sept. 25, 2003) to further support his arguments. *Barbosa* actually supports Defendants' motion. In *Barbosa*, the court granted summary judgment in favor of the employer on plaintiff's hostile work environment claim, holding that even accepting that all seven alleged instances of discriminatory conduct occurred, it is not enough to demonstrate that the workplace was "permeated with discriminatory intimidation, ridicule and insult." *Id.* at *4. The instances of alleged discriminatory conduct over an 18 month period included allegations that plaintiff: "(1) was unfairly blamed by his Caucasian co-workers and supervisors for almost anything that went wrong, and was reprimanded both privately and publicly; (2) was ignored by his Caucasian co-workers unless it was to say something critical or derogatory; (3) his Caucasian co-workers and supervisors refused to give him proper training or direction, and some refused to work alongside him; (4) he was not given the assignments upstairs that presented opportunities for training, learning and advancement; (5) his Caucasian co-workers and supervisors would regularly refer to him by using racially offensive words, names and appellations"; (6)"[h]is Caucasian co-workers would consistently yell and curse at him with no provocation or reason; [and (7) when] his Caucasian co-workers were assigned to work with one of the Hispanic pressmen, they would openly throw things, punch doors, slam doors and otherwise act in an angry and hostile manner." *Id.* The conduct in *Barbosa* was orders of magnitude more "severe" than that alleged by De Piero – and **summary judgment was granted.**

### C. De Piero has no evidence to prove a detrimental effect on his employment.

Much like De Piero's other arguments in opposition, De Piero claims that the purported "lies" told by his colleagues about him detrimentally affected his employment. Yet, he does not point to any "lie" in the record (just his subjective disagreement with others) and does not point to any evidence of a detrimental effect on his employment. To the contrary, as detailed above, De Piero remained employed in good standing, was offered a new contract at a higher rate of pay, and voluntarily left PSU-Abington to make more money elsewhere.

### D. De Piero's *respondeat superior* argument fails.

De Piero states, without identifying which of Defendants' cited authorities he is referring to, that "as PSU's own authority indicates, *respondeat superior* liability is not necessary to prove a hostile environment." Opp., p. 26. To the contrary, Defendants' Moving Brief makes clear that *respondeat superior* liability is the final element of a hostile work environment claim, albeit one that need not be addressed until plaintiff has satisfied the first four elements to prove this claim. *See* Moving Brf. p. 23; *see also Dean v. Philadelphia Gas Works*, No. CV 19-4266, 2021 WL 2661485, at *8 (E.D. Pa. June 28, 2021).

When he does address the issue of *respondeat superior,* De Piero seems to argue that he was discriminated against by Baer, his supervisor,[4] when Baer "presided over Borges' selective enforcement of PSU's anti-discrimination policies" in relation to the grievance De Piero filed with PSU-Abington. Opp., p. 26. As a threshold matter, De Piero does not identify how Baer discriminated against him. Rather, while citing to Borges' handwritten notes of a meeting she had with Baer, De Piero claims that "Baer admitt[ed] to Borges that Naydan was overreacting to

---

[4] Notably, in this same discussion, De Piero appears to concede that Naydan was not his supervisor. Opp., p. 26. He does not address at all how his other colleagues at PSU-Abington allegedly discriminated against him, essentially conceding that they did not. *See* Opp., pp. 26-27.

8

'things/interactions in the microaggressions category'; used the phrase 'microaggressions too frequently'; and was 'too much' committed to 'diversity issues'". (App.2439-2440). De Piero's Opposition omits a key part of the undisputed story. When asked if Borges' notes reflected her impression of Naydan, Baer testified unequivocally: "[n]o, that's not how I would explain this. I think that what I meant to say is the first part, Lila is very committed to diversity issues" and "[t]hat is Zack's perception that it's too much . . . *I personally don't think it's too much*." (App.1518-1519, Baer Dep. 189:23-190:10) (emphasis added).

In any event, to hold PSU-Abington liable for Baer's purported discrimination, De Piero must have evidence that the harassment resulted in a tangible negative employment action. As detailed above, he does not. *See* Moving Brf., pp. 23-24.

### E. De Piero has no support for his putative Section 1981 and PHRA claims against the Individual Defendants.

De Piero fails to set forth any material facts to warrant holding any of the Individual Defendants liable under Section 1981 (Count 2) or the PHRA (Count 5). Instead, De Piero conclusively argues that "there is ample evidence" that supports a finding of liability, yet fails to point to any of it, which is fatal to his Opposition. "Unsubstantiated arguments made in briefs are not considered evidence of asserted facts." *Williams v. Pennridge Sch. Dist.*, No. CV 15-4163, 2018 WL 6413314, at *4 (E.D. Pa. Dec. 6, 2018), *aff'd*, 782 F. App'x 120 (3d Cir. 2019). De Piero's claims against the individual defendants under Section 1981 and the PHRA must be dismissed.

### F. De Piero's putative claim for punitive damages must be dismissed.

Finally, De Piero's putative claim for punitive damages also must be dismissed because De Piero fails to address any arguments related to this claim in his Opposition. *See* Opp., pp. 1-30; *Campbell v. Jefferson Univ. Physicians,* 22 F. Supp. 3d 478, 487 (E.D. Pa. 2014) (when a plaintiff

9

responds to a defendant's summary judgment motion but fails to address the substance of any challenge to particular claims, that failure "constitutes an abandonment of th[o]se causes of action and essentially acts as a waiver of these issues.").

## CONCLUSION

For the reasons stated above, and in their Moving Brief, Defendants respectfully request that this Court grant summary judgment in their favor, and dismiss Plaintiff's Civil Action in its entirety, with prejudice.

Respectfully submitted,

Date: December 11, 2024

**SAUL EWING LLP**

*James A. Keller*
James A. Keller, Esq., ID No. 79855
Matthew J. Smith, Esq., ID No. 314157
Amy L. Piccola, Esq., ID No. 208888
Carolyn M. Toll, Esq. ID No. 326050
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA, 19102-2186

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZACK K. DE PIERO,<br><br>   Plaintiff,<br><br>v.<br><br>PENNSYLVANIA STATE UNIVERSITY, et al,<br><br>   Defendants. | CIVIL ACTION NO:<br><br>No. 2:23-cv-02281 |

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2024, Defendants' Reply in Support of Their Motion for Summary Judgment was filed with the Clerk of the Court by using the CM/ECF system. I certify that the following counsel of record are registered as ECF filers and that they will be served by the CM/ECF system:

**Michael Thad Allen, Esq.**
Allen Harris PLLC
PO Box 404
Quaker Hill, CT 06375
860-325-5001
mallen@allenharrislaw.com

**Samantha K. Harris, Esq.**
Allen Harris PLLC
PO Box 673
Narberth, PA 19072
267-304-4538
sharris@allenharrislaw.com
*Attorneys for Plaintiff*

Dated: December 11, 2024                    */s/ James A. Keller*
                                            James A. Keller, Esq., ID No. 79855

11