UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZACK DE PIERO,<br><br>PLAINTIFF<br><br>vs.<br><br>PENNSYLVANIA STATE UNIVERSITY and MARGO DELLICARPINI in her official capacity, and DAMIAN FERNANDEZ, , LILIANA NAYDAN, CARMEN BORGES, ALINA WONG, LISA MARRANZINI, FRIEDERIKE BAER, and ANEESAH SMITH, in their official and individual capacities,<br><br>DEFENDANTS. | Civil Case No. 2:23-cv-02281-WB<br><br>Date: March 20, 2025 |

**PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF HIS RETALIATION CLAIMS**

In compliance with this Court's Order of March 6, 2025 and in order to perfect all potential claims for appeal, Plaintiff respectfully submits this supplemental brief in support of his Title VII and PHRA retaliation claims. ECF No. 60.

I.  **THE COURT SHOULD ALLOW THE TITLE VII AND PHRA RETALIATION CLAIMS TO GO TO TRIAL, CONSISTENT WITH ITS STRICT ENFORCEMENT OF DEADLINES IN THIS MATTER.**

This Court has consistently held the parties to strict adherence to the schedules set by the Court. And in past instances, this worked disproportionately to disadvantage the Plaintiff.

- By August 9, 2024, after the discovery window closed, it became apparent that Defendants were withholding significant documents. Plaintiff submitted a letter motion to compel to obtain these documents.

- At the scheduled teleconference of August 20, 2024, the Court denied the letter motion as out of time. ECF No. 45.

1

- Plaintiff was therefore prevented from conducting relevant discovery.

- The discovery was probative as demonstrated by Defendants reliance upon some of the withheld materials in their summary judgment briefing as "objective evidence," without ever disclosing the underlying documents on which they purport to "objectively" rely. ECF No. 57 at 7.

Now, despite the fact that Defendants never moved for summary judgment on Plaintiff's Title VII and PHRA retaliation claims, the Court is considering granting summary judgment *sua sponte* on those claims.

The Court should instead adhere to its strict standards, and rule that any "11th-hour" (Defendants' terminology) summary judgment on these claims is denied as out of time and send those claims to trial.

In the alternative, the Court should *sua sponte* grant summary judgment in favor of Professor De Piero on the remaining claims.

## II. THE FACTS DO NOT SUPPORT SUMMARY JUDGMENT DISMISSING THE TITLE VII AND PHRA RETALIATION CLAIMS.

As briefed in Plaintiff's Response to Defendants Motion for Summary Judgment, which is here incorporated by reference, Professor De Piero was retaliated against based on the following undisputed facts:

- When he reported Defendants' pervasive environment of racial harassment, he was himself formally reported for "micro aggressions." This is itself clear retaliation. At Pennsylvania State University De Piero's supervisor considered it a "micro-aggression" to object to racial harassment.

- When Plaintiff spoke against racial stereotyping in the "White Teachers Confront White Privilege" program meeting, including by objecting that the constant barrage of

2

racial stereotypes demonizing white people might violate federal and state laws, his colleagues, in particular but not limited to, Liliana Naydan and Grace Lee-Amuzie, determined to lodge false claims against him to Defendants' "Affirmative Action Office."

- The compliance officer, Defendant Carmen Borges, testified at deposition that Professor De Piero's infraction was precisely his opposition to the unlawful stereotyping, whereas all of the other allegations against him turned out to be malicious lies as demonstrated by a recording of the meeting.

- A recording of the actual meeting demonstrates numerous lies told about Professor De Piero by his colleagues, who could not tolerate dissent from the pervasive atmosphere of racial harassment.

- Defendant Borges also treated the complaint against Professor De Piero, which was based on false accusations and "micro aggressions," in a completely different, and selective manner from De Piero's complaint of racial discrimination, which was not based on misrepresentations.

- Defendants, in particular, but not limited to, Grace Lee-Amuzie, pointed out that their actions and the pervasive environment of racial discrimination they sought to maintain and enforce against De Piero was part of Penn State's "strategic plan."

- The knowingly false representations in complaints and disciplinary action against Professor De Piero resulted discipline and punishment by reprimand in his personnel file.

- Pennsylvania State University also clawed back summary salary from Plaintiff De Piero in retaliation for his objections to its race-based dogma and harassment.

### III. PLAINTIFF INCORPORATES HIS RESPONSE TO SUMMARY JUDGMENT TO PERFECT HIS CLAIMS FOR APPEAL.

In order to perfect all claims for appeal, Plaintiff hereby incorporates the legal arguments and references to the joint Plaintiff's Record Appendix (ECF No. 56-4 through 56-5) set forth in his Response To Defendants' Motion for Summary Judgment. ECF No. 56 at 28-30. Those materials show that summary judgment dismissing the Title VII and PHRA retaliation claims is inappropriate.

The PHRA and "Title VII's anti-retaliation provision protects employees from employer actions that are serious enough to 'dissuade[] a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 70 (2006). To prove unlawful retaliation, De Piero need only show three elements:

> (1) he engaged in a protected activity;
>
> (2) he suffered an adverse employment action; and
>
> (3) there was a causal connection between the participation in the protected activity and the adverse action.

*Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017). De Piero "must show that a reasonable employee would have found the challenged action materially adverse" and PSU "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68 (internal quotation omitted). The Supreme Court has instructed not only that "context matters" in cases like these, but also that "excluding an employee from a weekly training lunch that contributed significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination." *Id.* at 69.

As to the first element, it is undisputed that Professor De Piero engaged in protected activity by submitting a Title VII complaint both to the EEOC and a PSU internal grievance. (*See e.g.*, 2434-2436.)

As to the second and third elements, although written reprimands, without more, may not constitute an adverse employment action, when considered in context, Professor De Piero's written reprimand contributes to a material dispute of fact. *See Roy v. Harrisburg Sch. Dist.*, No. 1:18-CV-2356, 2021 U.S. Dist. LEXIS 165003, at *16 (M.D. Pa. Aug. 31, 2021) (holding that plaintiff is permitted to "establish how a written reprimand altered … terms or conditions of employment") (citing *Mieczkowski v. York City Sch. Dist.*, 414 F. App'x 441, 446-47 (3d Cir. 2011)). And an employer's endorsement of retaliatory disciplinary measures or invocation of disciplinary processes can itself constitute adverse employment action, standing alone. *See e.g.*, *Skoorka v. Kean Univ.*, No. 17-5484 (KM) (MAH), 2019 U.S. Dist. LEXIS 39024 (D.N.J. Mar. 11, 2019).

In *Skoorka* (at the 12(b)(6) stage), the plaintiff alleged that he was subjected to a baseless written reprimand and also that the university "wrongfully brought unfounded disciplinary actions against him." *Id.* at *12, *27. The court held that "the disciplinary actions, assuming they are unwarranted, may be severe enough to qualify as potential retaliatory action." *Id.* at *19. Although *Skoorka* was decided on a motion to dismiss; here, the evidence establishes exactly what Skoorka merely pled. (Compare, App. 2464.) Discovery has shown that De Piero's immediate supervisor, Defendant Liliana Naydan, lied about Professor De Piero to get him disciplined and punished. In addition, Defendant Borges selectively enforced nearly identical claims of discrimination raised by Professor De Piero against Naydan. Borges prejudged the complaint, and did not even bother taking notes on her investigative interview with Naydan.

Defendant Carmen Borges merely provided another sounding board for Naydan's catalogue of "micro aggressions" in a pretextual "investigative interview.". (App. 2447.)

Defendant Naydan expressly cited Professor De Piero's report of her discrimination against him as justification for her grievance (less than a week after she learned that Professor De Piero had named her in his complaint). (App. 2484.) Borges then substantiated Naydan's bogus complaint and fabricated allegations never raised by anyone, *e.g.*, that Professor De Piero made threatening gestures. (App. 2505 at 31:09.) Professor De Piero then received a "performance expectations" reprimand in his personnel file for supposedly violating a "University Values" statement, which Baer admitted is not even a university policy. (App. 2996-2997.)

On Dean of Academic Affairs Andrew August's instructions, Defendant Friedericke Baer then downgraded Professor De Piero's annual performance reviews and told De Piero not to attend Naydan's "antiracist" meetings. (App. 2533.) Importantly, in the October 18, 2021 White Privilege Meeting, it was *exactly* De Piero's objections to discrimination and racial harassment that Borges found objectionable. (Borges Dep, 0868:2-0869:9.)

Then, when Professor De Piero understandably left PSU's toxic environment to get a new job, PSU retaliated once again, for good measure, by insisting on clawing back his pay. This retaliation caused Professor De Piero to work on behalf of PSU without compensation during July 2022.

IV. **PROFESSOR DE PIERO EXHAUSTED HIS ADMINISTRATIVE REMEDIES BY PLEADING FACTS MAKING OUT HIS RETALIATION CLAIM.**

In prior briefing, Defendants claimed that Professor De Piero did not previously raise his retaliation claims. (ECF No. 57 at 2-3.) Defendants presumably refer to the administrative proceedings that are prerequisite for a Title VII or PHRC claim. (There were EEOC 17 F20223/PHRC 202200988 and EEOC 17 F202161400/PHRC 202002519.)

This is clearly false, merely on the face of the administrative pleadings, just as it is on the face of the operative Complaint. (*See* ECF No. 62-1, Plaintiff's Supplemental Record Appendix, at App. 3639 – 3651; De Piero pleaded Title VII and PHRA retaliation in Counts 1 and Count 5. (ECF No. 1, ¶¶ 172, 206; 1888, ¶ 172; 1892, ¶ 206; ECF No. 4, ¶¶ 111, 123, 141, 175).)

In one administrative complaint, Professor De Piero expressly stated to the EEOC/PHRC the following:

> As a White writing instructor, I was continuously subjected to racial discrimination and harassment by my direct supervisor, Liliana Naydan (and others), amid the institution's push for "antiracism." After reporting these incidents to the PSU Affirmative Action Office (AAO), as well as the PHRC, I ***was retaliated against*** with a disciplinary "Performance Expectations Notice" and a punitive annual performance review – creating the conditions for a constructive discharge – thereby forcing my resignation on 8/2/22.

Supp. App. 3642.) (emph. added). Professor De Piero also specified the reasons that he had been discriminated against on the EEOC/PHRC complaint form as: "Retaliation." (*Id.* at 3641.)

In a Response pleading against Pennsylvania State University's Answer, Professor De Piero mentioned retaliation no fewer than 15 times. (Supp. App. 3652-3668 (highlight supplied).)

In addition, Defendant's Answer to one of Professor De Piero's administrative complaints specifically addressed his retaliation claims:

> Respondent [Defendant Penn State University] denies that Complainant [Professor De Piero] was subjected to any type of discrimination, harassment, or retaliation at any time during his tenure with respondent… Of note, complainant claims issues of discrimination and retaliation. . .

(Supp. App. 3645.) Defendants' administrative answer also incorporated by reference Professor De Piero's other administrative complaint (EEOC 17 F202161400/PHRC 202002519). (*Id.*)

7

The argument that Professor De Piero did not raise his retaliation claim in either the administrative proceedings of the EEOC and PHRC or in his Second Amended Complaint are frivolous.  (*See* ECF No.4, op. cit.)

V.   **CONCLUSION**

Professor De Piero's retaliation claim under Title VII and the PHRA should proceed to trial.

In the alternative, the Court should *sua sponte* grant summary judgment to Professor De Piero on these claims.

<u>March 20, 2025</u>

Respectfully submitted,

Michael Thad Allen (435762)
admitted *pro hac vice*
ALLEN HARRIS PLLC
PO Box 404
Quaker Hill, CT  06320
(860) 772-4738
m.allen@allen-lawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on the date appearing in this document, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system. I certify that the following counsel of record are registered as ECF filers and that they will be served by the CM/ECF system:

James A. Keller, Esq. (ID No. 79855)
Joseph F. O'Dea, Jr., Esq. (ID No. 48370)
Ashley E. Miller, Esq. (pro hac vice admission forthcoming)
Matthew J. Smith, Esq. (ID No. 314157)
SAUL EWING LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA, 19102-2186
T: (215) 972-1964
James.Keller@saul.com
Joseph.Odea@saul.com
Ashley.Miller@saul.com
Matthew.Smith@saul.com

*Attorneys for Defendants Pennsylvania State University, Damian Fernandez, Margo DelliCarpini, Liliana Naydan, Carmen Borges, Alina Wong, Lisa Marranzini, Friederike Baer, and Aneesah Smith*

                                                  */s/Michael Thad Allen*
                                                  Michael Thad Allen, Esq.