IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZACK K. DE PIERO,<br>               Plaintiff, | CIVIL ACTION |
| v. | |
| PENNSYLVANIA STATE UNIVERSITY, FRIEDERIKE BAER, CARMEN BORGES LILIANA NAYDAN, ANEESAH SMITH, and ALINA WONG,<br>               Defendants. | NO. 23-2281 |

## MEMORANDUM OPINION

This is the tail end of a dispute that Plaintiff Zack De Piero, a White man who previously worked as a writing professor at the Abington campus of The Pennsylvania State University ("Penn State" or "Penn State Abington"), has with Penn State and several of its employees—Friederike Baer, Carmen Borges, Liliana Naydan, Aneesah Smith, and Alina Wong (together, "Defendants").

The Court granted in part Defendants' Motion to Dismiss, dismissing the following claims: (a) Counts One, Two, and Five of the Amended Complaint to the extent they alleged disparate treatment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000d *et seq.*; 42 U.S.C. § 1981; and, the Pennsylvania Human Rights Act (the "PHRA"), 43 P.S. § 951 *et seq.*; (b) Count Two to the extent it alleged that Defendants violated the "equal benefit clause" of 42 U.S.C. § 1981; (c) Count Three to the extent it alleged violations of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*; and, (d) Count Four to the extent it alleged unconstitutional retaliation under the First Amendment in violation of 42 U.S.C. § 1983. *See generally De Piero v. Pennsylvania State Univ.,* 711 F. Supp.3d 410 (E.D. Pa. 2024); ECF No. 32.

1

After the close of discovery, the Court granted Defendants' Motion for Summary Judgment on Plaintiff's hostile work environment claims brought under Title VII, Section 1981, and the PHRA, which were pleaded in Counts One, Two, and Five of the Amended Complaint respectively. *See generally De Piero v. Pennsylvania State Univ.*, 2025 WL 723029 (E.D. Pa. Mar. 6, 2025); ECF No. 60.

Following that dismissal, Plaintiff's only remaining claims against Defendants are for retaliation in violation of Title VII and the PHRA, as pleaded in Counts One (Title VII retaliation against Penn State and Penn State Abington) and Five (PHRA against all Defendants) of the Amended Complaint. In Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment, he asserted that those claims should proceed to trial, on the grounds that Defendants had failed to ever seek their dismissal. *See* ECF No. 56. Defendants countered that they previously moved to dismiss the Amended Complaint in its entirety. *See* ECF No. 57. They also argued that this Court's Opinion and Order at the pleading stage made clear that De Piero did not have a live retaliation claim under Title VII and the PHRA. *See* ECF No. 57.

In its Summary Judgment Opinion, the Court clarified that it had made no pronouncements with respect to the status of Plaintiff's Title VII and PHRA retaliation claims. *See De Piero*, 2025 WL 723029, at *21 n.10 (citing *De Piero*, 711 F. Supp.3d at 418-24). However, it put Plaintiff on notice that it was "considering granting summary judgment *sua sponte* in [Defendants'] favor on the Title VII and PHRA retaliation claims pleaded in the Amended Complaint." *Id.* (citing *Chambers Dev. Co. v. Passaic Cty. Utils. Auth.*, 62 F.3d 582, 584 n.5 (3d Cir. 1995)); *see also DL Res., Inc. v. FirstEnergy Sols. Corp.*, 506 F.3d 209, 223 (3d Cir. 2007) (explaining that a District Court may grant summary judgment *sua sponte* on a given claim even in the absence of any motion filed by a party in appropriate circumstances). It then,

2

as it is required to do in such circumstances, provided the Plaintiff "with an opportunity to present relevant evidence in opposition" in the form of a ten-page brief in support of a denial of summary judgment. *See Chambers Dev. Co.*, 62 F.3d at 584 n.5; ECF No. 60. It also permitted Defendants to file a reply brief of the same length. *See* ECF No. 60. Having considered those briefs, the Court finds as follows.[1]

Title VII prohibits an employer from retaliating against an employee "because he opposed any practice made unlawful by this section . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The PHRA, meanwhile, "forbids an employer to discriminate against an employee because that 'individual has . . . testified or assisted, in any manner, in any investigation, proceeding or hearing under this Act.'" *Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007) (quoting 43 P.S. § 955(d)).

A retaliation claim under each statute requires a plaintiff-employee to either produce direct evidence of retaliatory treatment or circumstantial evidence that would permit a reasonable jury to infer retaliation on the part of the defendant-employer. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 792 n.9 (3d Cir. 2016) (explaining that retaliation claims brought under Title VII and the PHRA are analyzed under the same framework); *Mardell v. Harleysville Life Ins. Co.*, 31 F.3d 1221, 1225-26 n.6 (3d Cir. 1994), *rev'd on other grounds*, 514 U.S. 1034 (1995) (detailing burdens of production). Where, as here, a plaintiff relies on circumstantial evidence, his Title VII and PHRA retaliation claims are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Daniels v. School Dist. of Philadelphia*, 776 F.3d 181, 193 (3d Cir. 2015) (applying framework to Title VII

---

[1] The Court writes primarily for the benefit of the parties and assumes familiarity with the facts pertaining to the underlying dispute, which are set forth in prior opinions.

claim); *Blakney v. City of Philadelphia*, 559 F. App'x 183, 185 n.4 (3d Cir. 2014) (same for PHRA claim).

Under the first step of that framework, the plaintiff-employee bears the initial burden of stating a *prima facie* case of retaliation against the defendant-employer by establishing that: (1) he engaged in a protected activity; (2) the employer took some adverse action against him, either after or contemporaneous with the protected activity; and, (3) there was a causal connection between the protected activity and the adverse action. *Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 346 (3d Cir. 2022) (citing *Daniels*, 776 F.3d at 193).

At summary judgment, "the evidence must be sufficient to convince a reasonable factfinder to find all of the elements of [the] *prima facie* case." *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013) (citations and internal quotation marks omitted). If the employee fails to raise a genuine dispute of material fact as to any element of his *prima facie* case, summary judgment in favor of the employer is warranted. *See Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578, 580 (3d Cir. 1996). "A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-52 (1986)). "The non-moving party may not merely deny the allegations . . . instead, he must show where in the record there exists a genuine dispute over a material fact." *Id.* (citation omitted). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

Neither party disputes that De Piero engaged in protected activity when he filed a

complaint with the Equal Employment Opportunity Commission and an internal grievance (a "Bias Report") with Penn State's Affirmative Action Office (the "AAO") alleging racial discrimination. They have entirely different views, however, as to whether Penn State took any adverse actions against De Piero after he submitted his complaints.

Adverse employment actions are those material enough to "dissuade[ ] a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & S.F. Ry. v. White*, 548 U.S. 53, 68 (2006). Here, the crux of De Piero's argument is that Penn State retaliated against him for filing the two complaints by: (1) placing a "Performance Expectations" memorandum—a document he refers to as a "written reprimand" (an assumption Penn State challenges)—in his personnel file; and, (2) subsequently downgrading his annual performance review.[2] This Court previously sketched out that sequence of events as follows:

> Baer [Penn State Abington's Division Head of Arts and Sciences] and Lisa Marranzini, Penn State's Regional HR Strategic Partner, scheduled a meeting with De Piero for January 13, 2022, to set expectations for his interactions with colleagues going forward. The meeting went forward as planned. On January 20, 2022, Baer sent De Piero a memorandum titled "Performance Expectations," to summarize their meeting, a copy of which was placed in his personnel file. Among other things, Baer "reviewed with [him] some of the University values that are germane to this incident including respect, responsibility, excellence, and community." De Piero was also advised that he "need[s] to be mindful of how [his] behavior impacts others," and that "it is an expectation that [he] will be respectful to [his] colleagues." This included avoiding actions that "circumvent [Naydan's] authority" as Writing Program coordinator. De Piero asked for an opportunity to "tell [his] side of what happened at the meeting in October," but Baer informed him that he had already done so during the AAO's investigation, which they would not be reopening. Baer concluded by informing him that "[w]e will be continuing to

---

[2] De Piero also argues that Naydan retaliated against him by filing a separate Bias Report against him. However, he has not provided any support for this argument as required by Rule 7.1 of the Local Rules of Civil Procedure of the Eastern District of Pennsylvania. *See* E.D. Pa. R. Civ. P. 7.1(c) ("Every motion not certified as uncontested, or not governed by Local Civil Rule 26.1(g), shall be accompanied by a brief containing a concise statement of the legal contentions and authorities relied upon in support of the motion."). "Courts in this District have consistently held the failure to cite any applicable law is sufficient to deny a motion as without merit because zeal and advocacy is never an appropriate substitute for case law and statutory authority in dealings with the Court." *Anthony v. Small Tube Mfg. Corp.*, 535 F. Supp.2d 506, 511 n.8 (E.D. Pa. 2007) (citations and quotations omitted). Therefore, because De Piero's argument "consist[s] of no more than a conclusory assertion," it shall be "deemed waived." *Reynolds v. Wagner*, 128 F.3d 166, 178 (3d Cir. 1997) (citation omitted).

>monitor your performance to ensure you are taking appropriate steps to address the[se] concerns."
>
>On May 27, 2022, Baer reached out to [Andrew] August, who by then had returned to his role as Dean of Academic Affairs, to request his "help in formulating language for Zack De Piero's [Faculty Annual Review] letter." He replied a few days letter, stating: "Perhaps in the service section-something like—This year also saw significant challenges in your interactions with colleagues . . . . ?" To that end, when De Piero finally received his review from Baer in June 2022, he was rated "Very Good" in the "Scholarship of Teaching and Learning" category, which was consistent with his prior evaluations. But he was downgraded to "Fair to Good" in the "Service and the Scholarship of Service to the University, Society and the Profession" category, which De Piero now submits was "clearly retaliation . . . for his complaints of racial harassment." The evaluation read, in relevant part:
>
>Thanks for your service as an Abington Faculty Senator (concluded Spring 21), your membership on the Academic Integrity Committee, and your participation in the Fall 2021 Commonwealth Connections Instructor Days.
>
>As you know, an investigation into your conduct during a meeting with colleagues on October 18, 2021 by the AAO concluded that it was "aggressive, disruptive, unprofessional, and in opposition to the University's Values Statement." Civility and mutual respect are essential requirements for meaningful and effective service contributions designed to fostering an inclusive, welcoming and intellectually rich academic community. I would like to reiterate the expectation that I included in the summary of our meeting in January 2022: that you will be respectful to your colleagues and that you will conduct yourself professionally in all communications and behaviors. I rate your performance in the area of Service and the Scholarship of Service as Fair to Good.

*De Piero*, 2025 WL 723029, at *12.

De Piero concedes that written reprimands, like the "Performance Expectations" memorandum, do not themselves constitute adverse employment actions. *See, e.g.*, *Mieczkowski v. York City Sch. Dist.*, 414 F. App'x 441, 447 (3d Cir. 2011) ("Beyond alleging that the letters of reprimand were unjustly issued and placed in her permanent personnel file, [Plaintiff] has not demonstrated how the letters materially changed her employment status. In the absence of such evidence, and in light of the fact that the letters neither warned of future disciplinary action nor termination, we find that [Plaintiff] failed to demonstrate that the letters constituted adverse

6

employment actions."); *McKnight v. Aimbridge Emp. Serv. Corp.*, 2016 WL 8716275, at *7 (E.D. Pa. Sept. 16, 2016), *aff'd*, 712 F. App'x 165 (3d Cir. 2017) ("Even a written reprimand is insufficient, by itself, to establish an adverse employment action.").

However, citing *Skoorka v. Kean University*, 2019 WL 1125592 (D.N.J. Mar. 11, 2019), De Piero contends that his situation went beyond that of a garden variety written reprimand because the surrounding circumstances "contribute to a material dispute of fact."  In *Skoorka*, a *pro se* plaintiff alleged that his employer—Kean University—took a series of retaliatory actions against him after he lodged complaints to his superiors about discriminatory treatment on campus.  *Id.* at *5-8.  For instance, he averred that the University issued him a written warning, initiated formal disciplinary hearings that sought to revoke his tenure, suspended him, and stripped him of his teaching responsibilities, among other things.  *Id.*  The District Court found these allegations to be plausible at the pleading stage, concluding that a "transfer from a teaching to a nonteaching position is severe enough to qualify as a potential retaliatory act.  Likewise, disciplinary actions, assuming they are unwarranted, may be severe enough to qualify as a potential retaliatory action."  *Id.* at *8.

Here, De Piero points to the following events, which, in his view, demonstrate that the purportedly adverse employment actions—placing the "Performance Expectations" memorandum in his personnel file and subsequently downgrading his annual performance review—warrant that his claims should proceed to trial:

(1) Naydan repeatedly "lied about [him] to get him disciplined and punished";

(2) Defendant Carmen Borges, the AAO Officer assigned to investigate De Piero and Naydan's respective Bias Reports, "selectively enforced nearly identical claims of discrimination raised by [ ] De Piero against Naydan";

7

(3) "Borges prejudged the complaint, and did not even bother taking notes on her investigative interview with Naydan";

(4) "Borges merely provided another sounding board for Naydan's catalogue of 'microaggressions' in a pretextual 'investigative interview'";

(5) "Borges then substantiated Naydan's bogus complaint and fabricated allegations never raised by anyone, *e.g.*, that [ ] De Piero made threatening gestures";

(6) "On Dean of Academic Affairs Andrew August's instructions," Baer "told De Piero not to attend Naydan's 'antiracist' meetings"; and,

(7) When De Piero "understandably left [Penn State's] toxic environment to get a new job," it "insist[ed] on clawing back his pay."

Even if one were to put aside the question of whether *Skoorka*, a non-precedential and out-of-district case involving a *pro se* litigant at the pleading stage, has any application here, De Piero points "to no evidence in the record, and [the Court] find[s] none, that would sufficiently substantiate [these] claim[s] so as to create a genuine issue of material fact." *Versarge v. Twp. of Clinton*, 984 F.2d 1359, 1370 (3d Cir. 1993); *cf. Abington Friends Sch.*, 480 F.3d at 256 ("The non-moving party may not merely deny the allegations . . . instead, he must show where in the record there exists a genuine dispute over a material fact." (citation omitted)).

Taking each of De Piero's arguments in turn, he did not include any record citations to substantiate events (1) - (3). Regarding event (4), no rational trier of fact reviewing the cited document—an email from Naydan to Borges in which Naydan summarizes her complaints about De Piero's conduct—could determine that it supports his claim that Borges engaged in a "pretextual investigative interview." The citation provided by De Piero to substantiate event (5) similarly sheds no light as to whether Naydan's complaint was "bogus" or contained "allegations never raised by anyone." Instead, the discussion between De Piero and Borges about his behavior at the October 2021 Writing Program meeting was as follows:

> Later in the conversation, De Piero confronted Borges with her suggestion from their initial meeting in September 2021 wherein Borges said that he should consider

8

continuing to attend the Writing Program meetings to better understand the other participants' perspectives. To that Borges said:

> Well, I may have [said that] because I told you that you are entitled to engage and find out. The issue is the manner in which you did it. The problem was the manner. It came across hostile, aggressive, intimidating. And, and that's consensus among others that I have spoken to that were in the meeting . . . . It's not what you're trying to clarify for yourself. It's not how you tried to ask the question. It's the manner in which it was done. The tone, the body language is the aggressiveness [and] the insistency . . . .

*De Piero*, 2025 WL 723029, at *11.

Next, the record citation provided by De Piero to support event (6) mischaracterizes the statements made therein. That document does not state that Baer "told De Piero not to attend Naydan's 'antiracist' meetings"; it instead provides that if "there is a meeting where attendance is not required, and where you think a similar kind of situation may arise, *you may want to choose not to attend*." And finally, as to event (7), this Court previously rejected a similar argument made by De Piero at summary judgment in support of his hostile work environment claim, explaining:

> Following his resignation, Penn State asked him to return $3,386.47 of his July 2022 paycheck pursuant to a requirement in his contract that he "refund the university any part of [his] annual salary that has not been earned but paid to [him] when [his] service with the University terminates." De Piero argued that Penn State's attempt to recoup his paycheck was unwarranted because he had performed work over the summer before he resigned—namely, helping a student advisee register for courses at the request of the Acting Chair of the English Department. *But he ultimately abandoned this effort and returned the funds to Penn State*.

*De Piero*, 2025 WL 723029, at *13 n.6 (emphases added).

The only remaining arguments advanced by De Piero, then, are that Penn State retaliated against him by issuing the "Performance Expectations" memorandum and downgrading his annual performance review. But as stated above, it is well-established that written reprimands are not, without more, adverse employment actions. *See, e.g.*, *Weston v. Pennsylvania*, 251 F.3d

9

420, 431 (3d Cir. 2001), *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) (finding that the plaintiff failed to establish that two written reprimands constituted adverse employment actions because they had not caused "a material change in the terms or conditions of his employment" where he was not subsequently demoted in title or reassigned to another unit, suffered no reduction in pay, and maintained the same schedule); *Mieczkowski*, 414 F. App'x at 447.  The same is true of negative performance evaluations.  *See, e.g.*, *Walker v. Centocor Ortho Biotech, Inc.*, 558 F. App'x 216, 220 (3d Cir. 2014) ("A negative evaluation, by itself, is not an adverse employment action, and here [Plaintiff] concedes that . . . she received raises each year she worked for [Defendant]."); *Clark v. Philadelphia Hous. Auth.*, 701 F. App'x 113, 117 (3d Cir. 2017) (finding that the plaintiff "failed to allege any facts" to suggest that a statement in her performance review, which noted she could "improve on her attendance record to enhance her career potential even further" somehow "adversely affected the terms or conditions of her employment"); *Harris v. Keystone Cement Co*, 2021 WL 672416, at *9-11 (E.D. Pa. Feb. 22, 2021) (holding that the "several reprimands, criticisms, and performance reviews" did not "constitute adverse employment actions" under Title VII's anti-retaliation provision).  And here, no rational trier of fact could determine that Penn State materially changed the terms or conditions of De Piero's employment after he filed the two complaints—he "was not terminated as a result of his opposition to antiracist discourse.  Nor did Penn State impose any changes to his job responsibilities or benefits thereafter.  To the contrary, Penn State renewed his contract for the 2022 academic year, and he received a pay raise." *De Piero*, 2025 WL 723029, at *20.

Given the undisputed facts, De Piero has failed to carry his burden of making out a *prima facie* case of retaliation at step one of the *McDonnell Douglas* framework.  *See Geraci*, 82 F.3d

at 580; *Samuel Grossi & Sons, Inc.*, 49 F.4th at 346.  Accordingly, summary judgment shall be granted in Penn State's favor on his Title VII and PHRA retaliation claims.

An appropriate order follows.

                                        **BY THE COURT:**

                                        **S/ WENDY BEETLESTONE**

                                        **WENDY BEETLESTONE, J.**